# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

**FILED**

JUN 17 2008

MAGISTRATE JUDGE P. MICHAEL MAHONEY
United States District Court

UNITED STATES OF AMERICA

v.

THOMAS COOPER

CRIMINAL COMPLAINT

CASE NUMBER: 08CR50028

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 28, 2008, at Rockford, in the Northern District of Illinois, Western Division, THOMAS COOPER, defendant herein:

(Track Statutory Language of Offense)

> knowingly and intentionally distributed a controlled substance, namely, approximately 251.6 grams of mixtures containing cocaine base, a Schedule II Narcotic Drug Controlled Substance;

in violation of Title 21, United States Code, Section 841(a)(1). I further state that I am an FBI Special Agent and that this complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof:   x  Yes  ___ No

_____
Signature of Complainant
Christopher Hilgers, Special Agent, FBI

Sworn to before me and subscribed in my presence.

June 17, 2008                                at Rockford, Illinois
Date                                         City and State

P. Michael Mahoney, U.S. Magistrate Judge    _____
Name & Title of Judicial Officer             Signature of Judicial Officer

COUNTY OF WINNEBAGO   )
                     ) ss.
STATE OF ILLINOIS    )

## AFFIDAVIT

I, CHRISTOPHER HILGERS, being first duly sworn upon oath, depose and state:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for approximately 9 years. I have received training in the investigation of federal offenses, including narcotics offenses.

2. I have been assigned to assist in the investigation of cocaine trafficking, by Thomas Cooper and others. Other FBI special agents and law enforcement officers, including federal, state, and local officers, have participated in this investigation. I have discussed the results of their investigation into this matter with other agents and officers. This affidavit is based in part upon those discussions and in part upon my own investigation and observations. This affidavit contains information necessary to prove probable cause to support a complaint. It is not intended to include each and every fact and matter known to me regarding this investigation.

3. In November 2007 an undercover Drug Enforcement Administration (hereinafter referred to as "DEA") Task Force Officer (hereinafter referred to as "U/C") was introduced to Thomas Cooper as a person who was interested in purchasing crack cocaine from Cooper. Between November 2007 and May 2008, the U/C engaged in several telephone conversations with Cooper in which they discussed the U/C acquiring crack cocaine from Cooper. In addition, between November 2007 and May 2008, the U/C made

several purchases of cocaine base from Thomas Cooper in Rockford, Illinois. The U/C's most recent purchase of cocaine base from Thomas Cooper occurred in April 2008.

4. On April 24, 2008, at approximately 9:04 p.m., the U/C called Thomas Cooper. The U/C told Cooper that he wanted to see him about business[1] [acquire cocaine base]. The U/C told Cooper that he wanted to meet him that following Monday to get "a quarter," [one-quarter kilogram of cocaine base]. The U/C then asked if it was going to be about "six ?" [six-thousand dollars] Cooper said he was going to call a third party that night to get a "good number" [low purchase price] for the U/C. Cooper then promised to call the U/C with that price once he got out of class the next day.

5. On April 27, 2008 at approximately 8:33 p.m., the U/C called Thomas Cooper. During this conversation the U/C asked Cooper if their planned meeting was still going to occur. Cooper responded affirmatively. The U/C told Cooper that he intended to leave at 9:00 a.m. and arrive in Rockford between 11:00 a.m. and 12:00 p.m.

6. On April 28, 2008 at approximately 10:14 a.m. the U/C called Thomas Cooper. During this conversation, the U/C told Cooper that he was on his way to Rockford and should

---

[1] Throughout this affidavit, I will provide my interpretations of various intercepted text messages and conversations in brackets. These interpretations are based on my training and experience as a Special Agent with the FBI, my knowledge of the investigation, the content and context of the conversations, prior and subsequent conversations between the subjects, and my conversations with other law enforcement officers experienced in drug investigations. In addition, based on my training and experience, I am aware that drug traffickers typically use coded words and phrases to describe drug-related activities, and I have become familiar with particular terms and phrases used as codes by drug traffickers.

2

arrive by 12:00 p.m. On April 28, 2008 at 12:50 p.m., the U/C called Cooper and told him that he was at the prearranged location waiting for Cooper to arrive.

7.  On April 28, 2008 at approximately 1:01 p.m., the U/C met with Thomas Cooper inside the U/C's car while parked in the parking lot of El Burrito Loco at 2430 Auburn Street, Rockford, Illinois. During this meeting, the U/C saw a man ("Individual A") seated in the front passenger seat of the car driven to this location by Thomas Cooper. The U/C showed Cooper the $6,000 purchase money and told Cooper to "grab it." Surveillance agents then saw a second man ("Individual B") enter the back seat of the U/C's vehicle. Cooper ordered ("Individual B") to "go ahead and give it to him." Individual B handed the U/C a clear plastic bag containing approximately 251.6 grams of cocaine base wrapped in a pink shop rag. Following this exchange, Cooper and "Individual B" got out of the U/C's vehicle and left the parking lot in separate cars. The U/C left the area and met with investigating agents at a prearranged location. Investigating agents administered a field test to a portion of the substance acquired from Thomas Cooper and received a positive reaction indicating the probable presence of cocaine.

8.  On April 28, 2008 at approximately 1:12 p.m., the U/C called Cooper and discussed the future purchase of a larger quantity of cocaine base from Cooper.

9.  On May 29, 2008, investigating agents interviewed Thomas Cooper in the Rockford DEA office. Before asking him any questions, an agent informed Cooper of his Constitutional Rights under *Miranda v. Arizona*. Cooper informed the agent that he

understood his rights and agreed to answer his questions. During this interview, Cooper admitted that he sold the U/C approximately one-quarter kilogram of crack cocaine in exchange for $6,000.

CHRISTOPHER HILGERS
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO before me June 17, 2008.

P. MICHAEL MAHONEY
United States Magistrate Judge